UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORNEE EURING,

    Plaintiff,                                    Civil Action No. 19-CV-11675

vs.                                          HON. BERNARD A. FRIEDMAN

EQUIFAX INFORMATION
SERVICES, LLC, et al.,

    Defendants.
_____/

## **OPINION AND ORDER GRANTING DEFENDANT ONE DETROIT FEDERAL CREDIT UNION'S MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the Court on defendant One Detroit Federal Credit Union's motion for summary judgment [docket entry 32]. Plaintiff has responded, and defendant has replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

This is a consumer credit case in which plaintiff Dornee Euring alleges that defendants Equifax Information Services, LLC ("Equifax"); Trans Union, LLC ("Trans Union"); Santander Consumer USA, Inc. d/b/a Chrysler Capital ("Chrysler Capital"); Michigan First Credit Union; and One Detroit Federal Credit Union ("One Detroit") negligently and willfully violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. On June 6, 2019, Trans Union removed the case from 37th District Court to this Court. On November 20, 2019, a stipulated order of dismissal was filed as to Chrysler Capital. Plaintiff's claims against One Detroit involve allegations that his Equifax and Trans Union credit reports[1] show monthly payments of $46 and

---

[1] The parties have not provided a copy of plaintiff's Equifax and Trans Union credit reports although the information in these reports forms the basis of plaintiff's claims against One Detroit.

$255 on his closed One Detroit accounts because of One Detroit's inaccurate reporting. Plaintiff believes that the monthly payment amounts should be $0. One Detroit seeks summary judgment[2] on the grounds that it did not violate the FCRA because its reporting was accurate. For the reasons explained below, the Court shall grant One Detroit's motion.

*Background*

As noted, plaintiff alleges that One Detroit has inaccurately reported to Equifax and Trans Union "an erroneous monthly payment" of $46 and $255 on two different accounts where One Detroit's "Tradelines are closed with a $0 balance" and therefore "Plaintiff no longer has an obligation to make monthly payments." Compl. ¶¶ 6, 11-12. Upon noticing these "Errant Tradelines," plaintiff sent Equifax and Trans Union a letter dated January 22, 2018,[3] in which he asked them to correct various "Erroneous Scheduled Monthly Payment[s]" by changing them to $0. *Id.* ¶¶ 13-16; Def.'s Ex. B (PageID.324-25, 327-28).

---

In response to the Court's request for copies of the reports, plaintiff's counsel submitted two reports by Credit Karma that apparently contain information provided by Equifax (not Trans Union) about plaintiff's credit history. *See* Addendum to Pl.'s Resp. (PageID.518-22). One Credit Karma report is dated November 23, 2018, and the other report is dated March 8, 2019. As a result, the Court has not had an opportunity to review plaintiff's Equifax and Trans Union credit reports. The Court can only assume that Trans Union would have provided the same information to Credit Karma as Equifax did and that plaintiff's Credit Karma reports reflect the same information that appears on plaintiff's Equifax and Trans Union credit reports.

[2] One Detroit calls its filing a "motion for summary judgment" and indicates that it seeks relief pursuant to Fed. R. Civ. P. 12(c) and 56. Def.'s Br. at 3. "When evaluating a motion for a judgment on the pleadings [under Rule 12(c)], a court considers the complaint, the answer, and any written instrument attached as exhibits." *Crowton v. Bank of Am.*, No. 18-CV-10232, 2019 WL 423505, at *2 (E.D. Mich. Feb. 4, 2019) (citing Fed. R. Civ. P. 12(c)). The Court analyzes One Detroit's motion under Rule 56 because it considers exhibits that were not attached to the complaint or the answer.

[3] Plaintiff alleges in the complaint that he submitted these letters on January 22, 2019, Compl. ¶ 14; however, copies of the letters attached as Exhibit B to One Detroit's motion for summary judgment indicate that the letters are dated January 22, 2018.

Plaintiff's letter to Equifax made the following request with respect to One Detroit:

- One Detroit Credit Union, Open Date: June 2016: You are reporting this tradeline on my credit report with a monthly payment of $46.00. This is false as this account is closed, has a $0 balance and therefore, no monthly payment is owed. Please remove the monthly payment of $46.00 and replace it with $0.

- One Detroit Credit Union, Open Date: June 2016: You are reporting this tradeline on my credit report with a monthly payment of $255.00. This is false as this account is closed, has a $0 balance and therefore, no monthly payment is owed. Please remove the monthly payment of $255.00 and replace it with $0.

Def.'s Ex. B (PageID.324-25). Plaintiff's letter to Trans Union made the following request with respect to One Detroit, which was formerly known as Communicating Arts CU:

- Communicating Arts CU, Open Date: June 2016: You are reporting this tradeline on my credit report with a monthly payment of $46.00. This is false as this account is closed, has a $0 balance and therefore, no monthly payment is owed. Please remove the monthly payment of $46.00 and replace it with $0.

*Id.* (PageID.327-28). Both letters conclude with the following paragraph:

> I read on Google that you have 30 days or less to investigate my dispute, per the Fair Credit Reporting Act. My credit affects my ability to live and I work hard to maintain my credit. Please investigate my dispute and mail the results of your investigation to my address above.

*Id.* (PageID.324-25, 327-28). One Detroit states that plaintiff again sent letters to Equifax and Trans Union in March 2019, but copies of those letters have not been provided to the Court. Def.'s Br. at 1.

Plaintiff alleges that Equifax and Trans Union forwarded his letters disputing the information on his credit reports to the furnishers of the information, including One Detroit, and that the furnishers received these letters. Compl. ¶ 17. Plaintiff alleges that he did not receive Equifax's and Trans Union's "investigation results," but when he checked his Equifax and Trans Union credit reports on March 8, 2019, Equifax, Trans Union, and "the Furnishers failed or refused

to report the Errant Tradelines with a monthly payment of $0." *Id.* ¶¶ 18-19; *see* Addendum to Pl.'s Resp. (PageID.520-22).

Plaintiff's claims against One Detroit are negligent violation of the FCRA (Count V) and willful violation of the FCRA (Count VI). Plaintiff alleges in Count V that One Detroit was informed of plaintiff's letters but negligently failed to conduct a proper investigation of plaintiff's dispute, as required by § 1681s-2(b). Compl. ¶ 46. Plaintiff alleges that One Detroit was negligent in its investigation because "it failed to direct Equifax and Trans Union to report the Errant tradelines with a monthly payment of $0." *Id.* ¶ 47. Plaintiff further alleges that "[t]he Errant Tradelines are inaccurate and creating a misleading impression on Plaintiff's consumer credit file with Equifax and Trans Union to which it is reporting such tradelines." *Id.* ¶ 48. In Count VI, plaintiff alleges that One Detroit was informed by Equifax and Trans Union of his letters and "willfully failed to conduct a proper reinvestigation of Plaintiff's dispute," and "willfully failed to review all relevant information available to it and provided by Equifax and Trans Union as required by § 1681s-2(b)." *Id.* ¶¶ 53-54. Plaintiff alleges in both counts that One Detroit's "failure to perform its duties under the FCRA" has caused him to suffer "damages, mental anguish, suffering, humiliation and embarrassment." *Id.* ¶¶ 49, 55. Plaintiff seeks damages, costs, interest, and attorney fees.

*One Detroit's Motion for Summary Judgment*

One Detroit argues that it did not violate the FCRA because its reporting was accurate. One Detroit does not dispute that plaintiff's accounts were closed; it states that "[p]laintiff's credit disclosures reflect that [his] accounts . . . were closed with a zero balance." Def.'s Br. at 1. One Detroit states that it "researched Plaintiff's accounts at the request of [Equifax and Trans Union] and verified that it had accurately reported the status of the accounts," and that

it "again investigated following Plaintiff's March letter and determined again that its reporting was accurate." *Id.* at 2 (citing Def.'s Ex. B, Pl.'s Resp. to Co-Def.'s Req. for Produc. of Docs.; and Ex. C, Trans Union's Doc. Produc.). One Detroit states that its "report of Plaintiff's account status was at the least technically accurate where it reported the accounts 'Paid and Closed' with a $0 balance, and $0 past due," as well as information such as "Closed or Paid Account/Zero Balance." *Id.* at 10.

In response, plaintiff argues that he has made the necessary showing of inaccuracy because "[t]he scheduled monthly payment amounts in the [One Detroit] trade lines are false, because Plaintiff no longer has a scheduled monthly payment obligation to [One Detroit]." Pl.'s Resp. at 11. In addition, plaintiff points to the Consumer Data Industry Association's "2017 Credit Reporting Resource Guide" ("CRRG"), portions of which are attached to plaintiff's response as its only exhibit, "to show that [One Detroit's] violation of the FCRA was at least negligent, because [it] failed to meet the industry standard." *Id.* at 12. According to plaintiff, "[t]he CRRG required the [One Detroit] trade line to be reported with a scheduled monthly payment amount of $0, because the account was closed with a zero balance." *Id.* at 11. Plaintiff clarifies that he "does not rely on the CRRG to show that [One Detroit] violated the FCRA or that its reporting was inaccurate." *Id.* at 12. Plaintiff's entire argument with respect to One Detroit's alleged failure to conduct an adequate investigation is as follows: "[U]pon receipt of Plaintiff's credit reporting dispute, [One Detroit] was required to conduct a 'reasonable' investigation with respect to the disputed information." *Id.* at 11 (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012)).

*Legal Standard*

Plaintiff's claims against One Detroit are brought under § 1681s-2(b)[4] of the FCRA. At issue is whether plaintiff has shown that One Detroit provided inaccurate information to Equifax and Trans Union in violation of § 1681s-2(b).

"Under the FCRA, those who furnish information to consumer reporting agencies have two obligations: (1) to provide 'accurate' information; and (2) to undertake an investigation

---

[4] Section 1681s-2(b), entitled "Duties of furnishers of information upon notice of dispute," provides in relevant part:

> (1) In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –
>
> > (i) modify that item of information;
> >
> > (ii) delete that item of information; or
> >
> > (iii) permanently block the reporting of that item of information.

upon receipt of a notice of dispute regarding credit information that is furnished." *Tillman v. Equifax Info. Servs., LLC*, No. 19-12860, 2020 WL 249004, at *2 (E.D. Mich. Jan. 16, 2020) (quoting *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019)). "[C]onsumers must file a dispute with a consumer reporting agency to trigger the furnisher's duty to investigate under § 1681s-2(b)." *Id.* As to a consumer's right to assert a claim under § 1681s-2(b),

> [t]he "FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in § 1681s-2(b)." *Ibid.* . . . Regardless of the particular breach alleged, "a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)." *Id.* at 629.

*Id.*

The parties disagree on the definition of "accuracy." One Detroit argues that plaintiff's claims fail because its reporting is "technically accurate," Def.'s Br. at 10; Def.'s Reply at 1-2, whereas plaintiff argues that his claims survive because One Detroit's reporting is "patently inaccurate" (not just technically inaccurate). Pl.'s Resp. at 10. Both definitions of "accuracy" appear in recent Sixth Circuit cases. With respect to the definition of "technically accurate," this Court has recently explained that

> [t]he Sixth Circuit has held that reporting is accurate for purposes of the FCRA as long as it is technically accurate, or accurate on its face, stating:
>
>> [A] plaintiff has failed to carry his initial burden if a court finds that the information contained in a challenged credit report was accurate on its face, or put somewhat differently, "technically accurate." That is, a credit reporting agency satisfies its duty under section 607(b) if it produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect.
>
> *Dickens v. Trans Union Corp.*, 18 Fed. Appx. 315, 318 (6th Cir. 2001) (quoting *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). A consumer's conclusory allegation that a report is misleading is insufficient to meet this standard delineated by the Sixth

7

Circuit. *See, e.g., Elsady v. Rapid Global Business Solutions, Inc.*, 2010 WL 2740154 (E.D. Mich. 2010) ("at a minimum, a plaintiff must provide that a creditor or consumer of credit reports would be [misled]. When the recipient was not [misled], such a showing will be extremely difficult."). The standard, and the definition of accuracy, remains the same in cases involving both credit reporting agencies and furnishers of information. *Id.* at *7 ("[T]here is no reason to define accuracy differently for consumer reporting agencies and furnishers. The purpose of [the] FCRA is to protect consumers by ensuring accurate reporting of information and the commitment to accuracy should apply equally to all entities involved in the reporting process."). *Id.*

*Hamilton v. Equifax Info. Servs., LLC*, No. 18-13458, 2019 WL 3864742, at *3 (E.D. Mich. Aug. 16, 2019). The Sixth Circuit's definition of "accuracy" on which plaintiff relies is that an inaccuracy exists where "a plaintiff can show that the information provided is false or that it contains a material omission or creates a materially misleading impression." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 630 (6th Cir. 2018) (citing *Boggio*, 696 F.3d at 614).

*Discussion*

A Review of Plaintiff's Credit Reports[5] Indicates that the Monthly Payments are Not False or Materially Misleading

Even if the Court applies plaintiff's definition of accuracy, there is nothing false or materially misleading about the "Monthly Payment"[6] information on plaintiff's credit reports in light of the other information that appears on those reports. *See* Addendum to Pl.'s Resp. (PageID.519, 521-22). The reports indicate that plaintiff's One Detroit accounts are "Closed" or "Closed – Paid and Closed," and they provide the date on which the accounts were closed and the

---

[5] Despite the Court's specific request that plaintiff provide a copy of his Equifax and Trans Union credit reports, he has neglected to do so. *See supra* note 1. Therefore, references to plaintiff's credit reports are to his Credit Karma reports.

[6] Plaintiff challenges a "scheduled monthly payment" in his response, *see* Pl.'s Resp. at 5-6, 10-12, but the word "scheduled" does not appear in the complaint or on plaintiff's credit reports. The credit reports simply refer to a "Monthly Payment." *See* Addendum to Pl.'s Resp. (PageID.518-22).

date on which the last payment was made. The reports also indicate that the accounts' balance is $0, their "Payment Status" is "Current," and their "Amount Past Due" is "--." *Id.* Based on this information, and based on the payment history diagrams on the top right corner of the reports, the monthly payments are clearly historical information. If the monthly payment amounts were $0, this would arguably make the reports *more* accurate because it would confirm that the accounts are closed and that nothing is owed. But the "Monthly Payment" information is not inaccurate as it stands because the amounts refer to when the accounts were open, similar to how the "Highest Balance" information applied only when the accounts were open.

The Case Law Favors Granting One Detroit's Motion for Summary Judgment

The parties rely largely on cases from outside the Sixth Circuit; however, a recent case from the Western District of Tennessee is directly on point. In that case, the plaintiff alleged that defendant Royal Furniture Company ("RFC") violated the FCRA by reporting a tradeline with a "scheduled monthly payment" of $32 "when the account was, in fact, paid and closed." *Cowley v. Equifax Info. Servs., LLC*, No. 218CV02846TLPCGC, 2019 WL 4936036, at *1 (W.D. Tenn. Aug. 12, 2019). As in the present case, the plaintiff in *Cowley* alleged that RFC negligently or willfully failed to adequately investigate her dispute notice and "review all relevant information available to it and provided by Equifax and Trans Union." *Id.* at *3. RFC argued that there was no FCRA violation if "the information contained in a challenged credit report was accurate on its face, or . . . 'technically accurate,'" whereas the plaintiff argued that "the report is inaccurate if 'the information provided is false or . . . contains a material omission or creates a materially misleading impression.'" *Id.* (internal citations omitted).

The court granted summary judgment for RFC on the plaintiff's FCRA claim because regardless of the definition of "inaccurate" that it applied, the court concluded that

> [e]ither way, there is no triable issue of fact. The report was accurate because the $32.00 was the correct scheduled monthly payment amount while the account was active.
>
> The report was not materially misleading because Plaintiff submitted no proof that the report misled a creditor. Plaintiff provides only her opinion as evidence that she suffered "credit and emotional damages." (ECF No. 1 at PageID 5.) And the Sixth Circuit has repeatedly found that a personal opinion, by itself, cannot support an inaccuracy claim under the FCRA. *See, e.g.*, *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001) ("mere speculation . . . without more, is insufficient"); *Bailey v. Equifax Info. Servs., LLC*, No. 13-cv-10377, 2013 WL 3305710 (E.D. Mich. July 1, 2013) (conclusory allegations that the report is inaccurate and misleading is insufficient); *Elsady v. Rapid Global Bus. Sols., Inc.*, No. 09-cv-11659, 2010 WL 2740154 (E.D. Mich. July 12, 2010) (plaintiff must at least show that the defendant misled a creditor). Plaintiff has therefore showed no inaccuracy.
>
> * * *
>
> Plaintiff also argues that Defendant failed to conduct an adequate investigation following the receipt of a dispute letter as required by 15 U.S.C. § 1681s-2(b)(1). (ECF. No. 1 at PageID 6-7.) But a threshold showing of inaccuracy or incompleteness is necessary for a successful 1681s-2(b) claim. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 630 (6th Cir. 2018).
>
> Since Plaintiff did not do that here, the FCRA claim fails as a matter of law. The Court therefore GRANTS summary judgment as to this claim.

*Id.* (emphasis in original).

The court denied the plaintiff's motion to reconsider its order granting RFC's motion for summary judgment. One of the arguments raised by the plaintiff in her motion was that she "need not prove that RFC's reporting was materially misleading, so long as she proves that the reporting was false." *Cowley*, 2019 WL 5310205, at *1. The plaintiff also cited to the CRRG for the proposition that the monthly payment should have been $0. The court rejected the plaintiff's arguments as follows:

> First, the Court finds no reason to disturb its prior holding that the report was, in fact, accurate. The uncontested facts presented to the Court showed

that Defendant RFC's report to Equifax was accurate. It showed that Plaintiff had an installment account which called for 18 monthly payments of $32.00. (ECF Nos. 35-1 at PageID 160; 35-2 at PageID 166-67.) What is more, RFC's report to Equifax showed that Plaintiff paid the balance in full with a current balance of $0, an amount past due of $0, and an amount charged off of $0. (ECF Nos. 35-1 at PageID 160; 35-2 at PageID 167.) That report was accurate.

Plaintiff cites a segment of the Credit Reporting Resource Guide that states once an account is paid in full and closed, the scheduled monthly payment amount should be $0. (ECF No. 58-2 at PageID 362.) This guide does not control the outcome of this Court's accuracy finding. Even assuming the accuracy of Plaintiff's description of applicable best practices for when a debt is paid in full, her argument is misguided. The FCRA does not mandate perfect compliance with the Credit Reporting Resource Guide – it prohibits false and misleading credit reports. 15 U.S.C. § 1681s-2. . . .

Second, the Court finds no reason to disturb its finding that the report was not seriously misleading. Because the report accurately stated the scheduled monthly payment amount, Plaintiff's only option for recourse is to show that it materially misled another creditor. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 630 (6th Cir. 2018) ("To meet this standard, a plaintiff can show that the information is false or that it contains a material omission or creates a materially misleading impression."). As explained in this Court's prior order, Plaintiff submitted no proof that the report misled a creditor. (See ECF No. 67 at PageID 427.)

It is undisputed that RFC's report clearly stated that – despite listing a scheduled monthly payment amount of $32.00 – Plaintiff's balance was $0, amount past due was $0, and amount charged off was $0. (ECF Nos. 35-1 at PageID 160; 35-2 at PageID 166–67.) Any creditor reading that report would conclude that, despite the listed scheduled monthly payment amount, Plaintiff did not owe any more money to RFC. And the report made clear that RFC was not seeking to collect money from Plaintiff. *See Garrett v. Transunion, LLC*, No. 2:04-cv-00582, 2006 WL 2850499 (S.D. Ohio Sept. 29, 2006). So there was no clear error of law in holding that RFC's report was not materially misleading.

*Id.* at *2.

The plaintiff in that case also sued United Consumer Financial Services Company ("UCFSC") based on allegations "that [it] violated the FCRA by reporting a scheduled monthly payment when the account was, in fact, charged off and closed" and that it "did not adequately

investigate her dispute notice." *Cowley*, 2019 WL 5847851, at *1. The plaintiff claimed that these violations caused her "damages, undue stress, anxiety, mental anguish, suffering, and embarrassment." *Id.* In the "Background" section of its order granting UCFSC summary judgment, the court included the following subsection indicating that it cannot consider the CRRG in determining accuracy on summary judgment because the CRRG is inadmissible hearsay:

> **II. The Credit Reporting Resource Guide and Rule 56 of the Federal Rules of Civil Procedure**
>
> Plaintiff relies on the Credit Reporting Resource Guide ("CRRG") to argue that a genuine dispute of material fact exists about whether she owed the scheduled monthly payment of $72.00 when UCFSC reported it. (ECF No. 78 at PageID 532-33.) The CRRG is a report created by the Consumer Data Industry Association to "establish standards for the consumer reporting industry." (*Id.*) According to Plaintiff, the CRRG requires a creditor who has charged-off an account balance – like UCFSC did here – to report a balance of $0.00 to the credit reporting services. (*Id.* at PageID 533.) So according to Plaintiff, when UCFSC listed $72.00 as the scheduled monthly payment amount here, it was inaccurate. (ECF No. 77 at PageID 511-12.)
>
> But the Court cannot consider the CRRG to determine whether the listed monthly payment of $72.00 was accurate because it is hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is inadmissible unless it falls under an exception provided by the Federal Rules of Evidence. Fed. R. Evid. 802.
>
> The cited guidelines of the CRRG are out-of-court statements by an industry group. These are industry guidelines, not legal authority like regulations, laws or cases. Plaintiff argues that she is only proffering the CRRG to show that UCFSC negligently failed to change the scheduled monthly payment amount. At the same time, however, Plaintiff seems to claim this industry guide shows that the monthly payment amount UCFSC reported was inaccurate. (ECF No. 77-3.) But without testimony (through declaration or deposition by an expert witness) authenticating the CRRG guidelines, they are inadmissible hearsay. This Court cannot consider such submissions.
>
> The Sixth Circuit has long recognized that a court may not consider hearsay when deciding a summary judgment motion. *See, e.g.*, *Tranter v. Orick*, 460 Fed. App'x 513, 514 (6th Cir. 2012) (citing to *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)) ("[E]vidence submitted in opposition to

a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.") (internal citations omitted); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment."). As a result, the Court will not consider the CRRG in evaluating UCFSC's motion for summary judgment.

*Id.* at *2.

The court granted summary judgment for UCFSC on the plaintiff's FCRA claim because the plaintiff failed to make the required showing of inaccuracy or incompleteness. As with RFC's motion, the plaintiff and UCFSC relied on different definitions of "inaccurate" (UCFSC relied on the "technically accurate" definition; the plaintiff relied on the definition that includes the terms "false," "material omission," and "materially misleading"). In granting summary judgment for UCFSC, the court noted the lack of evidence that the plaintiff had submitted:

> The only evidence Plaintiff brings to defeat UCFSC's motion for summary judgment is that the industry guideline, the CRRG, suggests that when a furnisher of consumer information reports a charged-off debt, that report should reflect a scheduled monthly payment amount of $0.00. (ECF No. 78 at PageID 533.) But as already explained, the CRRG is inadmissible hearsay and the Court cannot consider it at the summary judgment stage. (*See supra* pp. 3-4.) By contrast, UCFSC relies on the affidavit of Timothy K. Spencer, its Chief Compliance Officer, who declared:
>
>> The amount of $72.00 was the correct scheduled monthly payment for Cowley's account because, pursuant to the Agreement, Cowley was obligated to make twenty-four (24) equal monthly payments in the amount of $72.04 to UCFS to repay the principal owed plus interest. If anything, the reported amount underreported Cowley's obligation by $0.04/month.
>
> (ECF No. 73 at PageID 450.) This evidence is undisputed.
>
> * * *
>
> Plaintiff provides no evidence in support of her claim that Defendant's report was inaccurate, nor does she cite case law supporting this assertion.

> (*Id.*) So Plaintiff effectively failed to dispute UCFSC's factual claim that the $72.00 scheduled monthly payment amount was accurate. Given Plaintiff's failure to rebut Defendant's evidence, the Court finds that there is no dispute as to material fact about the accuracy of UCFSC's report on Plaintiff's scheduled monthly payment.
>
> What is more, UCFSC's report here was not materially misleading because Plaintiff submitted no proof that the report misled a creditor. Plaintiff provides only her opinion without admissible evidence that the allegedly inaccurate report created a misleading impression of her consumer credit file for credit reporting agencies. (ECF No. 1 at PageID 5.) And the Sixth Circuit has repeatedly found that a personal opinion, by itself, cannot support an inaccuracy claim under the FCRA. *See, e.g.*, *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001) ("mere speculation . . . without more, is insufficient"); *Bailey v. Equifax Info. Servs., LLC*, No. 13-cv-10377, 2013 WL 3305710 (E.D. Mich. July 1, 2013) (conclusory allegations that the report is inaccurate and misleading are insufficient); *Elsady v. Rapid Global Bus. Sols., Inc.*, No. 09-cv-11659, 2010 WL 2740154 (E.D. Mich. July 12, 2010) (a plaintiff must at least show that the defendant misled a creditor). Plaintiff has therefore showed no inaccuracy here.
>
> \* \* \*
>
> Plaintiff also argues that Defendant failed to conduct an adequate investigation following the receipt of a dispute letter as required by 15 U.S.C. § 1681s-2(b)(1). (ECF No. 1 at PageID 6-7.) But a threshold showing of inaccuracy or incompleteness is necessary for a successful claim under § 1681s-2(b). *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 630 (6th Cir. 2018). As mentioned above, she failed to show inaccuracy or incompleteness.
>
> Since Plaintiff did not meet her threshold burden here, her FCRA claim fails as a matter of law. The Court therefore GRANTS summary judgment as to this claim.

*Id.* at *4 (emphasis in original).

Judge Cleland has likewise rejected a plaintiff's reliance on the CRRG to show that the defendant violated the Fair Debt Collection Practices Act ("FDCPA"):

> Plaintiff argues that the[] cases [showing that "Plaintiff cannot establish that Defendant's response was 'false, deceptive, or misleading' within the meaning of the FDCPA"] "are just plain wrong." (Dkt. # 36, Pg. ID 258.) Plaintiff cites no contrary caselaw. Instead, Plaintiff relies entirely on

14

> Defendant's alleged failure to follow "industry standards" as set out in the Credit Reporting Resource Guide, published by the Consumer Data Industry Association. (*Id.* at Pg. ID 252, 258.) Even assuming Plaintiff's description of applicable best practices is accurate, Plaintiff's argument is misguided. The FDCPA does not mandate perfect compliance with a particular software system's guidebook – it prohibits the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The court finds the logic of [the cases] persuasive, and Plaintiff fails to meaningfully contest it.

*Fulton v. Equifax Info. Servs., LLC*, No. 15-14110, 2016 WL 5661588, at *3 (E.D. Mich. Sept. 30, 2016).

For the same reasons that the court in *Cowley* granted summary judgment for RFC and UCFSC on plaintiff's FCRA claims, this Court shall grant summary judgment for One Detroit on plaintiff's FCRA claims. In the present case, there is no dispute as to the accuracy of the information in One Detroit's tradelines because the monthly payment amounts of $46 and $255 are the correct amounts when plaintiff's One Detroit accounts were active. Plaintiff has not shown that the monthly payments are "false." He also has not shown that the information in the tradelines is "materially misleading" because he has not provided proof that a creditor has been misled. A creditor is unlikely to be misled because One Detroit has provided evidence that it reported that plaintiff's accounts are "Closed," "Paid and Closed," and that they have a "Zero Balance," an "Amount Past Due" of "$0," and a "Balance Amount" or "Current B[alance]" of "$0." Def.'s Ex. B (PageID.323, 330-33). Plaintiff offers no evidence to rebut this, and he cannot rely on his own personal opinion to support an inaccuracy claim.

The only evidence that plaintiff has provided is a copy of portions of the CRRG to show that under industry guidelines the monthly payments should be $0. But the CRRG "does not control the outcome of [an] accuracy finding," *Cowley*, 2019 WL 5310205, at *2, and, as noted above, that court held that the CRRG (on its own, without any authenticating testimony) cannot be

15

considered at all on summary judgment because it is inadmissible hearsay. Plaintiff seems to recognize this given that he does not rely on the CRRG to show that One Detroit violated the FCRA or that its reporting was inaccurate; rather, he relies on it to show that One Detroit's "violation of the FCRA was at least negligent, because [it] failed to meet the industry standard." Pl.'s Resp. at 12. But a threshold showing of inaccuracy or incompleteness is necessary for a successful § 1681s-2(b) claim, including a claim of negligence, and plaintiff does not make this required showing.

Moreover, One Detroit correctly notes that plaintiff relies on cases from Georgia and Arizona that are inapplicable because in those cases the courts denied motions to dismiss based on findings "that a claim had been sufficiently pled." Def.'s Reply at 7. Indeed, the language plaintiff quotes from those cases relates to the sufficiency of the pleadings, which is a different standard than the one that applies in deciding a motion for summary judgment. Therefore, the cases on which plaintiff relies are inapplicable. Because plaintiff has failed to make a threshold showing of inaccuracy or incompleteness, his claims in Counts V and VI that One Detroit negligently or willfully failed to conduct an adequate investigation under § 1681s-2(b) fail.

*Conclusion*

For the reasons explained above,

IT IS ORDERED that One Detroit's motion for summary judgment is granted.

s/Bernard A. Friedman
Bernard A. Friedman
Senior United States District Judge

Dated: March 30, 2020
Detroit, Michigan

16